BEST IMAGE POSSIBLE



**goldberg weisman cairo**
Timothy J. Keiser
tkeiser@gwclaw.com
312-245-2182 - fax 312-245-2282

September 16, 2015

Wesley Stallings
Sedgwick Claims Management Services
P.O. Box 14451
Lexington, KY 40512

Karmen Love
Hortica Insurance
P.O. Box 428
Edwardsville, IL 62025

|  |  |  |
|---|---|---|
| Re: | Our Client: | Suzanne Barnum |
|  | Your Client/Insured: | Home Depot |
|  |  | NHI Properties Inc. |
|  | Location: | 3001 Plainfield Road |
|  |  | Joliet, IL 60435 |
|  | Date of Incident: | November 15, 2013 |
|  | Sedgwick Claim No.: | 20131177765 |
|  | HOrtica Claim No.: | L1300480-KRL |
|  | Our File No.: | M14-652 |

Dear Mr. Stallings and Ms. Love:

As you know, our office represents Suzanne Barnum for the injuries she sustained on the premises of a Home Depot managed by NHI Properties Inc. on November 15, 2013.

### FACTS OF LOSS

The occurrence at issue took place on the premises of a Home Depot store at 3001 Plainfield Road in Joliet, IL (Will County). On the date of the incident, Suzanne was a patron and an invitee legally on the aforementioned premises. At this time, Suzanne was shopping in the Home Depot gardening section, attempting to remove a planter from a top shelf. At this time, NHI Properties Inc. and Home Depot, by and through the actions of their employees, had negligently pulled in and left a pallet jack directly behind Suzanne in this well-travelled section of this store. The "tines" of the pallet jack were low enough that they could be missed by an onlooker, but high enough that they could not be stepped over. Suzanne, wholly unaware that the pallet jack was located to close to her, took a step backwards from the products she was facing. At this time, the tines of the pallet jack struck her legs, causing her to trip and lose her footing. As a result of losing her footing, Suzanne fell to the ground and landed on her left elbow, causing serious injury.

one east wacker drive, 38th floor - chicago, illinois 60601-9654 - (312) 464-1200 - (800) 486-1002 - fax (312) 464-1212 - www.justicestartstoday.com

9-28-2015　　　20131177765　　　Exhibit A

BEST IMAGE POSSIBLE

## LIABILITY

Illinois courts have found a meritorious cause of action predicated upon the presence of a dangerous or defective condition on a premise. *McLean v. Rockford Country Club*, 352 Ill.App.3d 229. The Illinois Supreme Court has held that a store may violate a duty owed to a customer when the customer is injured by a dangerous condition which a reasonable person would not expect to encounter, given the location in which it was encountered. *Ward v. Kmart Corp.*, 136 Ill.2d 132 (1990). Further, even if the condition causing injury was considered "open and obvious," a duty is still owed (and can be breached) if the store should have anticipated that such a customer would be distracted when encountering the condition. *Ward* at 136; *Green v. Jewel Foods*, 343 Ill.App.3d 830 (2nd Dist.). In determining whether the "distraction exception" is applicable, courts look at the obviousness of the hazard and the premises owner's anticipation that a customer may be distracted while encountering it. *Buchaklian v. Lake County YMCA*, 314 Ill.App.3d 195 (2nd Dist. 2000).

Since it is not the standard practice of Home Depot and/or NHI Properties Inc. to operate large equipment into high-traffic areas of the store and then leave them unattended, it is unlikely that Suzanne would have expected to encounter such a condition while shopping. Given that she was not expecting a pallet jack (or any other tripping hazard), why would she be actively looking for it? She did not see the pallet jack on Home Depot's floor because she did not expect it to be there, and was subsequently injured by an object she never expected to encounter.

Home Depot's and NHI Properties Inc.'s employees obviously knew of the dangerous condition created by their placement of this pallet jack and had a duty to either remedy or warn of this defective condition on its premises. Each entity was on notice of the dangerous condition the second their employee left the pallet jack in the middle of this area. By negligently failing to remove or remediate this pallet jack in a heavily traveled area of the store, the aforementioned employees created an unreasonably unsafe condition on their premises that resulted in grievous bodily injury to a patron.

At all times, therefore, Home Depot's and NHI Properties Inc.'s employees had a duty to provide safe conditions so as not to cause Suzanne and other patrons harm; by both creating and failing to remedy this open and obvious defect on your property, Home Depot, NHI Properties Inc., and their employees created an unreasonably unsafe condition, thus breaching this duty and making them the sole proximate cause of Suzanne's injuries.

Any allegations that the pallet jack on the floor was "open and obvious" are also immaterial as the distraction exception would be applicable. The *Buchaklian* court held that "a pedestrian cannot look up to avoid colliding with other pedestrians and, at the same time, look down to protect herself from tripping." *Buchaklian*, at 202-03. This same analysis is applicable in the instant case. Suzanne could not look down and behind to see and avoid any dangerous conditions on the floor of Home Depot, and still look at the wares that Home Depot was selling. Because selling home improvement items is Home Depot's chief line of work, Home Depot and NHI Properties Inc. expect customers to be fixated on the goods that line its shelves. Home Depot and NHI Properties Inc. clearly anticipate their customers *not* looking at their floors and are, instead, focusing on items for sale.

BEST IMAGE POSSIBLE

## DAMAGES

As a result of this incident, Suzanne was transported via ambulance to the emergency room at Provena Saint Joseph Medical Center, where she was treated for injuries in the extreme including, but not limited to, **comminuted fractures of the supracondylar humerus of the left elbow and the distal radius of the left wrist with a fully displaced and rotated condylar bone fragment (confirmed by diagnostic imaging, date of incident)**. Suzanne further suffered from blunt force trauma to the head with resultant cephalgia, nausea, and contusions. In an initial effort to treat Suzanne's acute, post-traumatic symptomatology, physicians prescribed a myriad of oral pain medications including, but not limited to, Codeine, , as well as Dilaudid and Zofran injections and the application of a long arm splint. Suzanne subsequently underwent **surgical intervention under general anesthesia in the form of an open reduction and internal fixation of the distal humerus**, followed by a physical therapy regimen and the use of a sling and a wrist brace.

During this period, Suzanne noted postoperative swelling from her left hand to her elbow, aching of the left shoulder, and continued pain of the left elbow, requiring the application of a dynamic splint, a flexion splint, and a compression sleeve. When, after months of this conservative treatment, Suzanne was diagnosed with left distal humerus non-union, she underwent **additional surgical intervention under general anesthesia in the form of removal of hardware, ulnar nerve transposition, olecranon osteotomy, olecranon open reduction and internal fixation, distal humerus open reduction and internal fixation, autogenous bone grafting, and iliac crest bone graft harvest**, followed by a course of Meloxicam, the use of a bone stimulator, and an additional round of physical therapy.

When Suzanne continued to suffer from limited range of motion of the left elbow in February 2015, a full fifteen months after the incident at issue, she underwent a third surgical procedure under general anesthesia in the form of a left elbow radical release and debridement with anterior and posterior capsulectomy, brachialis and triceps tenolysis, removal of anterior and posterior heterotopic bone, implant removal, and ulnar nerve neuroplasty. This was followed by a course of Medrol and Norco, the use of an elbow bi-direct static progressive stretch device, and another round of physical therapy.

In his July 31, 2014 operative report, Mark Cohen, MD, refers to Suzanne's condition as "one of the most difficult clinical problems we have seen at this institution for the past 20 years." While it is unfortunate that Suzanne's recovery did not smoothly, there has been no deviation from the standard of medical care provided to her. As such, the chain of causation between this incident and her injuries remains unbroken. As you're aware, a defendant takes the plaintiff "as they find them" and the fact that Suzanne had an unnaturally difficult recovery si still your insured's responsibility. Please note that Suzanne suffers from preexisting osteoporosis, which caused her recovery process to proceed very poorly. Clearly, Suzanne presents as a classic eggshell plaintiff.

Enclosed please find copies of all medical records and bills we have obtained for the care that Suzanne received as a result of this incident. These bills are as follows:

| | |
|---|---|
| City of Joliet | $ 1,075.00 |
| Presence Saint Joseph Medical Center | $ 9,231.33 |

BEST IMAGE POSSIBLE

| | |
|---|---|
| EMP of Will County | $ 721.00 |
| Joliet Radiological | $ 311.00 |
| Parkview Orthopaedic Group | $ 8,415.98 |
| Silver Cross Hospital | $ 26,870.65 |
| Associated Radiologists of Joliet | $ 273.00 |
| DuPage Medical Group | $ 26,331.00 |
| Midwest Orthopaedics at Rush | $ 91,926.14 |
| Rush University Medical Center | $ 104,686.02 |
| University Pathologists | $ 164.45 |
| Athletico Physical Therapy | $ 24,331.31 |
| Thera Tech Equipment | $ 7,642.00 |
| **TOTAL MEDICAL SPECIALS** | **$301,978.88** |

Suzanne also incurred wage loss as a result of her injuries. On the date of the incident, Suzanne was employed as a medical receptionist at DuPage Medical Group, where she earned $12.00 per hour. As a result of this incident, Suzanne missed 192.1225 hours of work. Enclosed please find wage loss information from Suzanne employer.

| | |
|---|---|
| Wage Rate | $ 12.00/hour |
| Time Missed | 192.225 hours |
| $12.00/hour x 192.225 hours | $ 2,305.47 |
| **TOTAL WAGE LOSS** | **$ 2,305.47** |
| **TOTAL SPECIALS** | **$304,284.35** |

### ACTIVITIES OF DAILY LIVING

Suzanne experienced various severe disruptions with her activities of daily living. Specifically, Suzanne had great trouble donning shirts and coats, typing, putting in earings, grooming her hair, putting on makeup, using utensils, and preparing and eating meals secondary to limited range of motion of her left arm and paresthesias of the left hand.

Suzanne's left forearm and hand were swollen for months after the incident at issue, so much so that she could not wear her rings. For over a year subsequent to this incident, Suzanne was unable to fullys straighten her arm. Suzanne further had trouble transferring from a sitting to a standing position, opening doors, using tools, driving, and finding a comfortable sleep position at night. Morevover, Suzanne was severely limited in her ability to garden, an activity she has enjoyed for many years.

In exchange for the enclosed materials, please forward to our office any liens you have received to date on Suzanne's file.

Based upon the facts giving rise to this incident, I am sure we can bring this matter to an amicable resolution without the need for litigation.

Please contact me upon your receipt of this letter so that we may discuss this matter in further detail.

BEST IMAGE POSSIBLE

Very truly yours,

GOLDBERG WEISMAN CAIRO

Timothy J. Keiser

Timothy J. Keiser
TJK/mjp/as
Enclosures