UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUZANNE BARNUM, ) | |
| ) | |
| Plaintiff, ) | No. 15 cv 11087 |
| ) | |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| HOME DEPOT U.S.A., INC., Individually, ) | |
| HOME DEPOT, U.S.A., INC. doing business as, ) | |
| THE HOME DEPOT, HOME DEPOT ) | |
| PRODUCT AUTHORITY, LLC, HOME ) | |
| DEPOT SPECIAL SERVICES, INC., GLEN ) | |
| WALTERS NURSERY, INC., (an Oregon ) | |
| Corporation), Individually, GLENN WALTERS ) | |
| NURSERY, INC., doing business as NHI ) | |
| PROPERTIES, INC., ) | |
| ) | |
| Defendants. | |

## **MEMORANDUM OPINION AND ORDER**

For the reasons discussed herein, Defendants' Motions for Summary Judgment [51, 54] are denied. A status conference is set for October 17, 2017 at 9:30 a.m. to set a trial schedule or discuss setting a settlement conference.

**I. Relevant Factual Background and Procedural History**

Plaintiff Suzanne Barnum ("Plaintiff") alleges that on November 15, 2013, she was shopping in the garden section of the Home Depot in Joliet, Illinois; at approximately 9:30 a.m., she took a potted plant off of a shelf, set it on the ground, and took a step back to look at the plant, when her right leg made contact with a pallet jack, causing Plaintiff to trip and fall.[1] (Dkt. 58 at ¶¶ 8-17.) Plaintiff did not see the pallet jack before tripping over it, did not see anyone using the pallet jack, and does not know how the pallet jack arrived in the aisle. (*Id.* at ¶¶ 16, 19-20.) At the time that Plaintiff fell, the pallet jack was in the middle of the aisle and the store

---

[1] A pallet jack is a hand-operated forklift that allows the operator to use the forks to easily move pallets of material.

manager at Home Depot had not received any complaints about the presence of the pallet jack in the aisle. (*Id.* at ¶¶ 26-28.) At the time of Plaintiff's fall, there was also an employee of a third party vendor, Defendant Glenn Walters Nursery, present at this particular Home Depot performing work in and around the garden section. (*Id.* at ¶¶ 49-50.)

It is unclear from the record how the pallet jack got into the position it was in when Plaintiff tripped over it, or how long it had been there, and all three parties vigorously dispute the issue. Unsurprisingly, in the aftermath of the accident, both Defendants (Home Depot and Glenn Walters Nursery) pointed fingers at each other, and there is evidence in the record suggesting that either one of them may have been responsible. Regarding Glenn Walters Nursery, Home Depot store manager Jeff Albertini ("Albertini") completed an Incident Witness Statement on the date of the accident. (Dkt. 56, Ex. F.) That document states: "[t]here were vendors that had been merchandising plants outside and may have been the last ones to use [the pallet jack] and left it in the current location. The name of the vendor is Glenn Walters Nursery." (*Id.*) On the other hand, an email chain circulated among Glenn Walters Nursery employees within two weeks of the incident claims that Glenn Walters Nursery employees didn't "touch the pallet jack at all," but that a "[Home Depot] associate was using a pallet jack that morning bringing product out to [a Glenn Walters employee]" in front of the store. (Dkt. 57-3.)[2]

Plaintiff filed suit against Defendants in the Circuit Court of Cook County, alleging negligence and premises liability; Home Depot then removed the case to federal court. (Dkt. 1.) The parties executed a joint consent on July 21, 2016. (Dkt. 32.) Both Defendants have moved

---

[2] Both Defendants contend that the statements in this email chain are hearsay. (Dkt. 61 at ¶ 10; Dkt. 63 at ¶ 10.) Without deciding whether that email chain will ultimately be admissible at trial, the Court notes that it may not be hearsay pursuant to Federal Rule of Evidence 802(d)(2)(D), which states that a statement "is not hearsay" if "[t]he statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Although this email chain includes several layers – Merchandising Manager Ryan Turinsky relaying a version of events from Merchandising Specialist Jill Mixer as told to her by Merchandising Coordinator Marsy Forseth – each of those layers likely meets the criteria necessary to satisfy Rule 802(d)(2)(D).

for summary judgment, arguing that Plaintiff's claims are based only on speculation, and, therefore, have not created a genuine issue of material fact showing that either Defendant breached its duty of ordinary care to Plaintiff. For the reasons discussed further herein, the Court rejects Defendants' arguments and denies both of their motions for summary judgment.

## II. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette Indiana*, 359 F.3d 925, 928 (7th Cir. 2004). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Cellotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Cellotex,* 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

## III. Discussion

Illinois law governs in this diversity case; Plaintiff must show the standard elements to prove that the Defendants were negligent: 1) a duty owed to the Plaintiff; 2) a breach of that

3

duty; 3) causation, and 4) damages. *See Piotrowski v. Mendard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016) (citing *Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of N.Y., Inc.*, 953 N.E.2d 427, 431 (Ill App. Ct. 2011)). "When a business's invitee is injured by slipping on a foreign substance, the business can be liable if the invitee establishes that: (1) the substance was placed there by the negligence of the business; (2) the business had actual notice of the substance; or (3) the business had constructive notice of the substance."[3] *Id.* (citing *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014)). "To prove that the defendant, rather than a third party, created the dangerous condition, Illinois courts require a plaintiff to (1) demonstrate that the foreign substance was related to the defendant's business, and (2) offer 'some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises.'" *Id.* (quoting *Zuppardi*, 770 F.3d at 650)).

In this case, the Court finds that Plaintiff has pointed to sufficient evidence in the record from which it can be inferred that either Defendant was more likely than not to have left the pallet jack in the aisle of the garden center.[4] Because each Defendant has moved individually, the Court will consider the facts in the light most favorable to the Plaintiff vis-à-vis each moving Defendant for the purposes of their respective motions. Regarding Glenn Walters Nursery, the statement written by Albertini expressly stated that Glenn Walters Nursery employees were using the pallet jacks that morning and may have left the pallet jack in the aisle. The Court believes that this is "some further evidence" from which a reasonable fact finder could infer that Glenn Walters Nursery was likely responsible for leaving the pallet jack in a place where

---

[3] Because the Court reaches its decision based on the first issue, it does not reach issues related to notice.
[4] The Defendants do not argue that the pallet jack was unrelated to their respective businesses, and the Court will not discuss that element here.

4

Plaintiff could trip over it.

As for Home Depot, the internal email chain between Glenn Walters Nursery employees states that a Home Depot employee was using the pallet jack to assist Glenn Walters Nursery employees that morning, and that no Glenn Walters Nursery employees touched a pallet jack that morning. The Home Depot employee who was named elsewhere in that email chain (Earl Williams) also testified that it was "off limits for a customer to use a pallet jack."[5] (Williams Dep. 48:9-10, Oct. 26, 2016.) Additionally, the pallet jacks were typically kept in the back of the store in "receiving," where "they do all the garbage and shipping coming in and what not," not in the portion of the store typically open to the public. (Williams Dep. at 30:10-12.) Moreover, Albertini testified that the customer traffic the morning of the accident had been "[n]onexistent." (Albertini Dep. at 15:19.) Putting this evidence together, and drawing all inferences and construing all facts in favor of Plaintiff as the non-moving party, the Court believes that Plaintiff has highlighted sufficient evidence to overcome Home Depot's motion for summary judgment. If, in fact, customers could not use pallet jacks, no Glenn Walters Nursery employee touched the pallet jack that morning, and a Home Depot employee was using the pallet jack to assist Glenn Walters Nursery employees with their merchandise in the garden center that morning, a reasonable fact finder could easily infer that it was more likely than not that a Home Depot employee (not a customer or a Glenn Walters Nursery employee) was responsible for leaving the pallet jack in the aisle.

Both Defendants rely heavily on *Piotrowski* in their briefs. In *Piotrowski*, the plaintiff

---

[5] In its reply brief, Glenn Walters Nursery argues that Williams's testimony implies that customers sometimes use pallet jacks because he testified that he would stop a customer if he saw a customer using a pallet jack. However, the question posed to Williams was framed as a hypothetical scenario (*i.e.*, "[i]f you saw a customer using a pallet jack, would you say anything or do anything?"), and the testimony does not state that he actually ever saw any customers using a pallet jack. (Williams Dep. at 48:5-10.) In fact, as noted above, the only definitive statement from Williams suggests that customers were prohibited from using pallet jacks. Again, the Court must draw all inferences and construe all facts in the light most favorable to the Plaintiff at the summary judgment stage.

slipped and fell on two stones outside of a Menard's store; the stones were likely from a planter in front of the store. *Piotrowski*, 842 F.3d at 1038. The Seventh Circuit upheld the district court's decision to grant summary judgment in favor of the defendant, holding that plaintiff's arguments that a Menard's employee had caused the rocks to spill out of the planter were "only speculation, and speculation is not sufficient to survive summary judgment." *Id.* at 1039. The Seventh Circuit reasoned that the plaintiff had not "adduced evidence that the rocks' placement in the parking lot was more likely caused by Menard's negligence rather than by that of a customer or other third party," because "potential causes of rock depletion were many and included that patrons or children were carrying it away, power washing of the store front, overfill, and customers or employees setting something on the planter with the result that the rocks moved onto the surrounding parking lot when the object was pulled off the planter." *Id.*

This case is easily distinguishable from *Piotrowski*. First, there were not myriad explanations for how the pallet jack could have been left in the aisle as a tripping hazard. As noted above, pallet jacks were off-limits to Home Depot customers, and only Home Depot employees and third party vendors were allowed to use them. Because Glenn Walters Nursery was the only vendor who may have been using the pallet jacks in the garden center that morning,[6] only a Home Depot employee or a Glenn Walters Nursery employee could have left the pallet jack in the aisle. Second, there is more than Plaintiff's mere speculation in this case suggesting it is more likely than not that one of the Defendants was responsible for the pallet jack in the aisle. Home Depot's internal documents suggest that it was Glenn Walters Nursery, which is sufficient evidence to infer that it was more likely than not Glenn Walters Nursery that

---

[6] There was another vendor working in the garden center on the day of the accident called Grand Flowers. However, Albertini testified that Grand Flowers provided annuals for the Home Depot garden center, and that annuals are not typically delivered on pallets. (Albertini Dep. at 55:10-17, 66:9-11.) There is no evidence on the record whatsoever to suggest that any Grand Flowers employee ever used or had access to a pallet jack on the morning of the accident.

6

was responsible for leaving the pallet jack in the aisle, thereby defeating its motion for summary judgment. Glenn Walters Nursery's internal communications suggest that it was a Home Depot employee, which is sufficient evidence to infer that it was more likely than not Home Depot that was responsible for leaving the pallet jack in the aisle, thereby defeating its motion for summary judgment. The evidence on the record in this case is beyond the speculation that was dismissed in *Piotrowski*, and requires that this Court deny Defendants' motions for summary judgment.

Similarly, the Seventh Circuit in *Zuppardi* affirmed summary judgment in favor of the defendant in a case where the plaintiff had slipped and fallen on an accumulation of water in a Wal-Mart store. 770 F.3d at 650. In that case, the plaintiff had "simply offered evidence that she slipped on something that happens to be sold by Wal-Mart, and such evidence fails to support an inference that Wal-Mart caused the spill." *Id.* Again, the Plaintiff here has supplied more evidence than simply demonstrating that Home Depot has pallet jacks, and that she fell over a pallet jack. She has whittled the universe of potential causes down to two entities and has provided evidence suggesting that either one of those entities may have been responsible for leaving the pallet jack in the aisle. As such, this case is distinguishable from *Zuppardi* as well. Plaintiff has provided sufficient evidence to support an inference that an employee of one of the Defendants left the pallet jack in the aisle, and therefore the Court denies the Defendants' motions for summary judgment.

**IV.  Conclusion**

For the reasons discussed herein, Defendants' Motions for Summary Judgment [51, 54] are denied. A status conference is set for October 17, 2017 at 9:30 a.m. to set a trial schedule or discuss setting a settlement conference.

**ENTERED: 10/10/17**

_____
**U.S. Magistrate Judge, Susan E. Cox**